**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| WING JOE, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:15-CV-00393 |
| | § | |
| COLONY SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| Defendants. | § | |

## COLONY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE RICARDO HINOJOSA:

Defendant Colony Insurance Company, misnamed in this lawsuit as Colony Specialty Insurance Company, files this Motion for Summary Judgment under Federal Rule of Civil Procedure 56, seeking judgment on the following issues:

1. An insurer has a duty to promptly acknowledge an insured's claim for damage under an insurance policy and to issue timely payment for covered losses. Following a March 29, 2012, hailstorm, Colony promptly investigated Wing Joe's claim and after two inspections of the commercial property, issued a final estimate that called for complete roof replacements on all five apartment buildings, replacement of broken windows and repairs to address all other wind and hail related damage covered under the policy. Wing Joe's public adjuster agreed with the final estimate and Colony issued timely payments accepted by Wing Joe without complaint in May and August 2012. Over two years later, in October 2014, another public adjuster retained by Wing Joe presented a new demand for the same damage previously addressed, including payment for roofs which had already been replaced.  Did Colony satisfy its duties under the insurance policy?

2. An insured has a duty to timely report a claim, submit a signed, sworn proof of loss when requested and cooperate with its insurer's investigation. Compliance with these duties is a condition precedent to recovery under the policy, and failure to comply may prejudice an insurer's ability to assess the scope of covered loss and determine when and how the damage occurred. Wing Joe remained silent for over two years after accepting agreed upon payments from Colony without complaint and, replaced its roofs before submitting a supplemental claim for the same damage previously addressed by Colony. Wing Joe never returned the signed Sworn Proof of Loss for the later reported claim.  Do Wing

Joe's actions satisfy its duties under the insurance policy to timely report a claim, submit a signed sworn proof of loss and cooperate with its insurer's investigation?

3. Under Texas law, absent a breach-of-contract finding against an insurer, evidence of an independent tort and indicating something more than a *bona fide* legal or factual dispute, extra-contractual claims asserting breach of the duty of good faith and fair dealing, Texas Insurance Code and Deceptive Trade Practices Act fail as a matter of law. And they must be asserted in a timely manner. Because Colony promptly investigated the claim and issued timely payment based on a final estimate agreed upon by Wing Joe's public adjuster/representative and accepted without objection, do Wing Joe's extra-contractual claims fail as a matter of law? Alternatively can these facts support anything more than a *bona fide* factual or legal dispute over coverage under the insurance policy? And if so, were the claims brought timely, within the applicable statutes of limitations?

## SUMMARY JUDGMENT EVIDENCE

**EXHIBIT A** – Relevant Portions of Colony Policy

- A1 – Certification Page [Colony/Wing Joe 0491]
- A2 – Declarations [Colony/Wing Joe 0490]
- A3 – Premises 2 Coverage [Colony/Wing Joe 0506-0507]
- A4 – Exclusions [Colony/Wing Joe 0576-0577]
- A5 – Conditions [Colony/Wing Joe 0557-0558]

**EXHIBIT B** – Colony's Claim-Handling Documents

- B-1 – Business-Records Affidavit
- B-2 – Notice of Claim [Colony/Wing Joe 0853].
- B-3 – Acknowledgment of Claim [Colony/Wing Joe 0850-0851].
- B-4 – Assignment to Abercrombie [Colony/Wing Joe 0852]
- B-5 – April 23, 2012 Abercrombie Report [Colony/Wing Joe 0983-01031].
- B-6 – I-Logs [Colony/Wing Joe 01158-01166].
- B-7 – Hadhazi Letter of Representation [Colony/Wing Joe 0173-0176].
- B-8 – Proof of Payment [Colony/Wing Joe 0732-0735, 0776-0779; 1450-1457].
- B-9 – October 8, 2014 Acknowledgment Letter. [Colony/Wing Joe 0153]
- B10 – Payment Letter [Colony/Wing Joe 0843-0844]
- B11 – August 2, 2012 Abrocrombie Report [Colony/Wing Joe 0873-0929]
- B12 – I-Logs [Colony/Wing Joe 0611-0613]
- B13 – Acknowledgment Letter [Colony/Wing Joe 0159-0160]
- B14 – ROR Letter & Request for Sworn Proof of Loss [Colony/Wing Joe 0132-0133; 0154-0158]
- B15 – November 21, 2014 Abrercrombie Report [Colony/Wing Joe 0306-0308]

**EXHIBIT C** – Affidavit of Luis Miller

**EXHIBIT D** – D. Degroot Demand Letter with IntegraClaim Estimate [Colony/Wing Joe 0004-00120].

**EXHIBIT E** – Kintigh Estimate

**EXHIBIT F** – Affidavit of Darin Lasater
- F1 – Storm Damage Evaluation Report
- F2 – Supplemental Expert Report

**EXHIBIT G –** Affidavit of Jeff Hunt
- G1 – Expert Report of Jeff Hunt
- G2 – Supplemental Expert Report of Jeff Hunt

**EXHIBIT H** – Plaintiff Wing Joe's Responses to Defendant's Requests for Admissions

## FACTUAL BACKGROUND

1.      Colony insured properties owned by Wing Joe under Policy MP3735950, effective from October 26, 2011 to October 26, 2012.[1] On March 30, 2012, Wing Joe reported a claim for damage from a hailstorm that hit the Rio Grande Valley area on March 29, 2012.[2] Three days later, on April 2, 2012, Colony acknowledged receipt of the claim by letter and by e-mail to Wing Joe's agent.[3] On the same day, Colony retained Abercrombie, Simmons & Gillette, Inc. ("Abercrombie") to investigate the claim.[4] Abercrombie adjuster Luis Miller contacted Wing Joe on April 3, 2012, and scheduled an appointment to inspect the insured properties on April 10, 2012.[5] Mr. Miller completed his damage estimate and sent it to Colony on April 16, 2012.[6]

2.      On April 20, 2012, Colony adjuster Richard Effertz called the insured to discuss the amounts owed under the policy based on Mr. Miller's inspection and findings.[7] Effertz

---

1 Exhibit A1-A3, Relevant Portions of Colony Policy.
2 Exhibit B-2, Notice of Claim[Colony/Wing Joe 0853].
3 Exhibit B-3, Acknowledgment [Colony/Wing Joe 0850-0851].
4 Exhibit B-4, Assignment to Abercrombie [Colony/Wing Joe 0852].
5 Exhibit B-5, First Abercrombie Report [Colony/Wing Joe 0983-01031].
6 Exhibit C [Affidavit of Luis Miller]; Exhibit B-6. I-Logs [Colony/Wing Joe 1163-1164].
7 Exhibit B-6. I-Logs [Colony/Wing Joe 1162-1164].

followed up by sending a letter on April 24, 2012, advising the insured of the basis for payments being made for hail damage which included roof replacement for all five buildings and interior damage to certain apartment units reported at that time.[8] After applying the deductibles and depreciation, payments were authorized and issued in the total amount of $14,885.22.[9]

3.      On April 30, 2012, Effertz spoke with the insured and confirmed it received the checks.[10] On May 25, 2012, Colony received notice that the insured had retained One Way Public Adjusters regarding the claim.[11] On June 13, 2012, Miller notified Effertz that he had spoken with Gary Pennington of One Way Public Adjusters, who claimed that he had found some additional interior damage.[12]

4.      On June 20, 2012, Mr. Miller met with Wing's Joe's public adjusters Cannon Purdue and Jon Purdue with One Way Public Adjusters. Mr. Purdue pointed to some damaged drip edges and additional minor water damage to the bedrooms in apartments 3, 4, and 6. He also asked Colony to allow for resetting of satellite dishes. Miller submitted a supplemental estimate for these items. Purdue also pointed out some chipping on exterior bricks, but Miller pointed out that the chipping was present on all sides of the building, including those not affected by hail. Rather, the chipping on the exterior bricks was caused by the sulfur content, a material defect in in the Mexican clay bricks. As such, there was no coverage for the chipped bricks. Importantly, Purdue agreed with Miller's updated estimate,[13] which was submitted to Colony on August 2, 2012, and summarized by Miller as follows:

---

8 Exhibit B-10 Payment Letter [Colony/Wing Joe 0843-0844].
9 Exhibit B-8 [Colony/Wing Joe 0776-0779].
10 Exhibit B-6, I-Logs [Colony/Wing Joe 1162].
11 Exhibit B-6, I-Logs [Colony/Wing Joe 1161].
12 Exhibit C ¶6 p. 2 [Miller Affidavit].
13 Exhibit B11, Abercrombie August 2, 2012 Report [Colony/Wing Joe 0874]; Exhibit C.

- **Building 1** – My revised estimate attached is in the amount of $13,501.44, less non-recoverable depreciation in the amount of $4,855.07, for an ACV claim of $8,646.37. After application of the $4,446.00 deductible, that leaves a net claim of $4,200.37.

- **Building 2** – My revised estimate attached is in the amount of $18,390.46, after application of the non-recoverable depreciation in the amount of $6,401.05, for an ACV loss of $11,989.64. After the $5,908.00 deductible is applied, that leaves a net claim in the amount of $6,081.64.

- **Building 3** – My revised estimate attached is in the amount of $14,533.57. Should non-recoverable depreciation be considered, it is in the amount of $5,527.07, for an ACV loss of $9,006.50. After application of the $4,446.00 deductible, there is a net claim in the amount of $4,560.50.

- **Building 4** – My revised estimate attached is in the amount of $12,086.61. Should non-recoverable depreciation be considered, it is in the amount of $3,658.11, for an ACV loss of $8,428.50. After application of the $4,446.00 deductible, there is a net claim in the amount of $3,982.50.

- **Building 5** – My revised estimate attached is in the amount of $2,516.14, less non-recoverable depreciation in the amount of $860.49 for an ACV claim of $1,655.65. After application of the $2,500.00, leaves a net claim of zero.[14]

5.    Wing Joe admits that its own adjuster, Jon Purdue, who was acting on behalf of Wing Joe, **agreed** with Miller's final damage estimates on which the supplemental payments were based.[15] On August 8, 2012, after deducting the amounts of the previous payments, Colony authorized and issued the following supplemental payments: (1) $677.29 for Building 1; (2) $1,808.42 for Building 2; (3) $997.49 for Building 3; and (4) $436.59 for Building 4.[16] Wing Joe accepted these payments without complaint and did not contact Colony or its adjusters for over two years after the August 2012, final payments were issued under claim number 212227.[17]

6.    On September 23, 2014, Wing Joe's new public adjuster, Stephen Hadhazi of IntegraClaim sent Colony a letter of representation.[18] Wing Joe reported the loss as a new claim

---

14 *Id.*
15 Exhibit H. Plaintiff's Responses to Defendant's Request for Admission No. 1 at page 2.
16 Exhibit B-8, [Colony/Wing Joe 732-735].
17 Exhibits C ¶10 p. 2; Exhibit B-6. [Colony/Wing Joe 732-735]
18 Exhibit B-7, Letter of Representation; Exhibit B6, I-Logs [Colony/Wing Joe 1158].

on October 2, 2014, alleging October 18, 2012, as the date of loss.[19] Because Wing Joe's public adjuster alleged October 18, 2012, as the date of loss, Colony processed this claim separately from the March 29, 2012, claim.[20] On October 8, 2014,[21] Colony's adjuster, Mark Barber acknowledged receipt of the claim, number 238776, and once again assigned Abercrombie adjuster Luis Miller to inspect the property and report on damage observed.[22] Because of Wing Joe's late reporting, Colony adjusted the claim under a full reservation of rights as conveyed in a letter to Wing Joe and its public adjuster on November 13, 2014.[23] Colony also requested that Wing Joe return a signed Sworn Proof of Loss by December 20, 2014.[24]

7.      Luis Miller inspected the property with Wing Joe's new public adjuster, Stephen Hadhazi on October 20, 2014.[25] Miller found no new damage, whereas Hadhazi claimed that there was hail damage to the brick exterior on all five buildings.[26] Hadhazi also claimed that hail had somehow damaged the insides of the A/C condensers, despite admitting that there was no exterior damage on these units.[27] Miller also observed that all roofs had been replaced after the March 29, 2012, hailstorm claim and that there was no hail damage.[28] In response to Miller's observation regarding the roof replacements, Hadhazi confirmed that he was no longer seeking roof replacements, and left before Miller completed his inspection.[29]

8.      On November 26, 2014, Colony received a letter of representation from The DeGroot Law Firm demanding payment in the amount of $640,226.38.  The letter attached an

---

19 Exhibit B-7, IntegraClaim Notice of Claim [Colony/Wing Joe 0173-0174; 0178].
20 Exhibit B-12, I-Logs [Colony/Wing Joe 0612-0613].
21 Exhibit B-13, October 8, 2014 Acknowledgment Letter [Colony/Wing Joe 0159-0160].
22 *Id.*
23 Exhibit B-12, I-Logs [Colony/Wing Joe 0611] Exhibit B-14, Reservation-of-Rights Letter [Colony/Wing Joe 0132-0133; 0154-0158].
24 *Id.*
25 Exhibit C, Affidavit of Luis Miller ¶ 11 p. 2-3.
26 *Id.*
27 *Id.*¶11 p. 3
28 *Id.*¶12-13 p. 3
29 *Id.*

estimate from Hadhazi's company, IntegraClaim with a footnote indicating that it was printed on September 21, 2014, two days before this latest claim was reported to Colony. ***Hadhazi's estimate total $640,226.38, and included the cost of replacing all roofs, all exterior brick and other damage unrelated to windstorm or hail that had been previously addressed during the two previous inspections in 2012.***[30] And, Wing Joe has still not returned the signed Sworn Proof of Loss form requested by Colony and which was due December 20, 2014.

9.        Evidently abandoning Hadhazi and IntegraClaim's excessive and grossly inaccurate damage estimate,[31] on February 26, 2016, Wing Joe's counsel produced new damage estimates prepared by Gary Kintigh with Blackstar SRT, LLC, dated March 5, 2015, almost three years after the March 29, 2012, loss occurred.[32] These damage estimates total $242,889.89, make no distinction between hail and other loss or damage and call for unwarranted repairs and replacement of the brick masonry which suffered no hail related damage.[33] This estimate was prepared almost three years after the hailstorm and not submitted for Colony's review and consideration until almost four years after the claim was first made.

## ARGUMENTS AND AUTHORITIES

10.        Colony complied with all its duties under the policy and paid Wing Joe for all loss or damage covered under the Policy. After Wing Joe presented its claim in March 2012, claim number 212227, Colony promptly investigated the claim and paid Wing Joe for covered loss or damage observed - including complete roof replacements on all five buildings. When Wing Joe claimed additional damage, Colony's independent adjuster promptly met with Wing Joe's independent adjusters to re-inspect the properties and recommended supplemental payments that

---

30 Exhibit D [Demand Letter and Integra Estimate]; Exhibit G,  Hunt Affidavit ¶3 & 4
31 Exhibit G Hunt Affidavit ¶ 3 & 4.
32 Exhibit E, Kintigh Estimate
33 Exhibit G Hunt Aff ¶6 p. 2-3 and Exhibit F, Lasater Aff ¶3-4 p. 2-3

Colony approved. Wing Joe's authorized representative, a public adjuster agreed with the final estimate and Wing Joe accepted these supplemental payments without complaint, repaired the roofs of its properties, and did not present any supplemental claims to Colony under claim number 212227.  Colony fully satisfied its duties to Wing Joe under the Policy.

11.     Over two years later, on October 8, 2014, Wing Joe's new public adjuster, Stephen Hadhazi, notified Colony that it was claiming damage from an October 18, 2012, storm. Colony reserved its rights for this late reported claim and assigned claim number 238776 to the loss and requested a signed Sworn Proof of Loss in support of the claim. Hadhazi left early before Luis Miller completed his inspection of the roofs because he said Wing Joe was not claiming roof damage. However, Hadhazi subsequently issued an estimate for $640,226.38, including the cost to replace the roofs. Further, Wing Joe never returned the signed Sworn Proof of Loss as requested by Colony. In the unlikely event that Wing Joe could introduce evidence that Colony underpaid the claim, Wing Joe has waived its rights under the Policy by failing to comply with Policy's conditions precedent to coverage. Colony asks this Court to disregard the Hadhazi estimate as unsubstantiated and as part of a second claim that Wing Joe failed to timely report and for which he never returned the Sworn Proof of Loss form requested by Colony.

12.     It is unclear whether the latest Blackstar estimates presented to Colony on February 26, 2016, almost four years after the March 29, 2012, loss, and dated March 5, 2015, almost three years after the loss, relate to the first claim, number 212227, which was promptly handled and paid based on agreed estimates and closed, or to the later claim, number 238776, in which the insured failed to timely submit the claim or return the Sworn Proof of Loss form as requested by Colony, both conditions precedent to coverage. Regardless of the claim, Colony asks that the estimates, which make no distinction between hail and other loss or damage

8

observed, and call for unwarranted repairs and replacement of the brick masonry which suffered no hail related damage, be disregarded as untimely, and prejudicial to Colony's right to investigate the causes of the damage now being claimed.

13.     Lastly, Wing Joe's extra-contractual claims accrued no later than August 8, 2012. But Wing Joe did not file suit until July 14, 2015, well after the two year statute of limitations ran on Wing Joe's extra-contractual causes of action.  In short, even if these claims had any basis, which they do not, Wing Joe filed its lawsuit too late.

**A.  Summary Judgment Standard.**

14.     Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[34] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying that which it believes demonstrates the absence of a genuine issue of material fact.[35] Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.[36] The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts"[37] and there must be "significant probative evidence" on which a jury could reasonably find for the non-movant.[38]  If the non-movant fails to present such evidence to support an essential element of his claim, summary judgment is appropriate.[39]

**B.  Wing Joe's Breach of Contract Claim fails as a matter of law.**

15.     In 2012, Colony accepted and paid Wing Joe's claim of damage for the March 29

---

[34] *See* FED. R. CIV. P. 56(c); *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 516 (5th Cir. 2010).

[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. Adams*, 836 F. 2d 958, 960 (5th Cir. 1988).

[36] *Celotex*, 477 U.S. at 322–323; *Anderson*, 477 U.S. at 257; *Bradley*, 620 F.3d at 516.

[37] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[38] *Anderson*, 477 U.S. at 256.

[39] *Celotex*, 477 U.S. at 322–23.

and April 2, 2012 hailstorms. After Colony issued supplemental payments on this claim, Wing Joe agreed with the total damage estimate and accepted payment without complaint.  Colony heard nothing more for over two years, when Wing Joe's new public adjuster asserted damage from an October 18, 2012, hailstorm. If the second claim, number 238776, was from a separate hailstorm on October 18, 2012, Wing Joe failed to timely report this claim, which precludes its breach-of-contract cause of action. Because of Wing Joe's agreement with Colony's damage assessment and payment on the first claim, number 212227, and its late reporting of the second claim, Wing Joe is estopped from now arguing that Colony breached the contract. Even if Wing Joe suffered additional damage from these storms, it failed to timely report any additional damage for over two years, and there is no evidence that any additional damage Wing Joe now claims was present when Colony's adjuster inspected the properties. Regardless of the date of loss, Wing Joe failed to comply with its obligations under the Policy to timely report a claim.

>     a.   *Wing Joe failed to report damage from an October 18, 2012, hailstorm for almost two years.*

       16.     Wing Joe's claim that Colony breached the insurance contract by underpaying its claim is precluded by Wing Joe's failure to timely report as required by the following policy conditions:

> **3.**     **Duties In The Event Of Loss Or Damage**
>
>     **a.**     You must see that the following are done in the event of loss or damage to Covered Property:
>
>                       ***
>
>     **(2)**     Give us prompt notice of the loss or damage. Include a description of the property involved.
>
>     **(3)**     As soon as possible, give us a description of how, when and where the loss or damage occurred.
>
>     **(4)**     Take all reasonable steps to protect the Covered Property from further damage, and keep a record of

your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)**   At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

**(6)**   As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)**   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)**   Cooperate with us in the investigation or settlement of the claim.[40]

17.    Before an insurance company can be liable under a policy, an insured must comply with basic conditions such as timely reporting an insurance claim.[41] As the Texas Supreme Court stated in *Dairyland County Mutual*, "failure to perform the condition constitutes an absolute defense to liability on the policy."[42] The Fifth Circuit recently held an insured to its obligation to promptly report a claim.[43] In *Alaniz*, there was evidence that the property owner was aware that the March 29, 2012, hailstorm had caused significant damage in the area. Approximately one year after the storm, one of his tenants notified the insured of roof leaks. The

---

[40] Exhibit A-5, Loss Conditions.
[41] *Dairyland Cnty. Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 157 (Tex. 1973).
[42] *Id.*
[43] *Alaniz v. Sirius Ins. Corp.*, 626 Fed.Appx. 73 (5th Cir. 2015).

owner attempted to patch the roof, but the leaks eventually returned. A few weeks later, after a neighbor notified the owner that the damage could be hail-related, the owner retained counsel. Despite retaining counsel, he did not make a claim until five months later, on February 14, 2014. Finding that the insured provided no reasonable excuse for the late reporting, the Court held that the late notice precluded the insured's claim as a matter of law.[44]

18.     Wing Joe reported the second claim on October 2, 2014, with a date of loss of October 18, 2012. Like in *Alaniz*, Wing Joe waited almost two years to report the claim. *Alaniz* cited other cases that found unreasonably late reporting with the much shorter periods of (1) three-and-a-half months after an automobile accident;[45] (2) 46 days after damage to an aircraft;[46] and (3) 6 months after mold damage became apparent.[47] Although the issue of what constitutes a reasonable amount of time is generally a fact question, the Fifth Circuit in *Alaniz* held that this issue is a matter of law when the insured provides no reasonable explanation for the delay.[48] Wing Joe cannot provide a reasonable excuse for its failure to timely report the claim to Colony.

19.     Under *Alaniz* and related case law, an insurer must also show it was prejudiced by the late reporting. As the Fifth Circuit noted in *Alaniz*, the purpose of requiring prompt reporting is to allow the insurer to investigate the claim close in time to the occurrence, when the evidence is fresh, so that it can accurately assess the scope of covered loss.[49] In *Alaniz*, the Court considered the following evidence of prejudice in accepting the insurer's late-notice defense:

> [I]t is evident that there has been continued deterioration of the properties due to water damage that could have been at least partially avoided by prompt action on Alaniz's part. Alaniz estimates the damage at upwards of $650,000. This

---

44  *Id.* @ 79

45  *Allen v. W. Alliance Ins. Co.,* 349 S.W.2d 590, 593–94 (Tex.1961).

46  *Edwards v. Ranger Ins. Co.,* 456 S.W.2d 419, 421 (Tex.Civ.App.—Fort Worth 1970, writ ref'd., n.r.e.).

47  *Flores v. Allstate Texas Lloyd's Co.,* 278 F. Supp. 2d 810, 819 (S.D. Tex. 2003)

48  *Alaniz*, 626 Fed. Appx. at 76 *citing Cont'l Sav. Ass'n v. U.S. Fidelity & Guaranty Co.,* 762 F.2d 1239, 1243 (5th Cir.1985).

49  *Alaniz*, 626 Fed. Appx. at 78 (citing *Stonewall Ins. Co. v. Modern Exploration, Inc.,* 757 S.W.2d 432, 435 (Tex. App.—Dallas 1988, no writ)).

continued deterioration of the property prejudices Sirius's ability to investigate to what extent any damage to the properties might be attributable to the March 2012 hailstorm and exacerbates the cost of any repairs.[50]

20.     Although in *Alaniz* the prejudice arose from additional damage that occurred from leaks because of the insured's failure to make a claim and protect its property, the prejudice in this case arises from the fact that Wing Joe replaced all of its roofs sometime after the first claim. Despite the fact that Wing Joe had already replaced its roofs under the first claim, as paid for by Colony, Wing Joe's IntegraClaim estimate in the second claim seeks complete replacement of the new and undamaged roofs. Assuming that Wing Joe's property was actually hit by an October 18, 2012, hailstorm, Colony has no way of knowing whether the storm damage that Wing Joe currently claims has already been remedied or occurred after it made repairs or, whether any damage now being claimed is the result of any number of other potential causes of loss arising from other weather events or tenants living in the apartment complex during the two years from the reported date of loss and when the second claim was submitted.

21.     To the extent Wing Joe's allegations relate to the March 29 and April 2, 2012 hailstorms and its second claim was merely a supplement to the first, there is no evidence that Colony underpaid the claim from these storms. In fact, Wing Joe admits that its public adjuster, Jon Purdue of One Way Public Adjusters agreed with Colony's final estimate as prepared by Colony's independent adjuster, Luis Miller. Wing Joe's failure to timely claim additional damages also prejudiced Colony's ability to adequately assess the amount of damage it underpaid, if any, and precludes Wing Joe's claim for additional damage as a matter of law.

> b. *Any additional damage Wing Joe is claiming is excluded by policy provisions.*

22.     To maintain its cause of action for breach of contract, Wing Joe must introduce sufficient evidence for each of the following elements: (1) Wing Joe and Colony had a valid,

---

[50] *Id.*

enforceable contract; (2) Wing Joe performed, tendered performance of, or was excused from performing his contractual obligations; (3) Colony breached the contract; and (4) the breach caused Wing Joe's injury.[51] In the insurance context, a policyholder must first prove that any claimed losses are actually covered by an insurance policy.[52] Colony does not dispute that damage from wind and hail are covered by the Policy, which is why it issued payment of $14,885.22 and then supplemental payments of $3,919.79. Further, an insured is only entitled to recover the portion of damage caused solely by a covered peril.[53] To the extent that there is property damage in excess of Colony's estimate, as Colony previously advised the insured and their representative in April 2012, this damage is excluded by express provisions in the Colony Policy, which Colony asserted in its Answer:

    B.    Exclusions

        2.    We will not pay for loss or damage caused by or resulting from any of the following:

            ***

        d.    (1)    Wear and tear;

            (2)    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

            (3)    Smog;

            (4)    Settling, cracking, shrinking or expansion

            ***

        f.    Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

            ***

---

51 *B&W Sup. v. Beckman*, 305 S.W.3d 10, 16 (Tex.App.—Houston [1st Dist.] 2009, pet. denied).
52 *See Employers Casualty Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), disapproved on other grounds, *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996).
53 *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 574 (Tex. App.—San Antonio 2011).

3.      We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

c.      Faulty, inadequate or defective:

(2)     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

\*\*\*

(3)     Materials used in repair, construction, renovation or remodeling; or

(4)     Maintenance;

of part or all of any property on or off the described premises.[54]

23.     Wing Joe has failed to show the Property suffered any damage that was covered and not excluded by these provisions. This is consistent with the opinions of Colony's adjuster and experts who re-inspected the property. First, Luis Miller stated:

Once again, the public adjuster we met with, Mr. Steven Hadhazi, was claiming the hail damaged the brick exterior on all five buildings. We advised Mr. Hadhazi that this issue had already been addressed with the previous public adjuster, Mr. Jon Purdue, of One Way Public Adjusting in San Antonio. It was previously agreed that the chips on the bricks were caused by sulfur content in the brick as well as the poor quality of the Mexican brick used to construct the exterior siding of the buildings.[55]

24.     After Colony's retained expert Jeff Hunt re-inspected the property on February 4, 2015, he also found several instances of excluded damages. The following excerpts are just a few examples of damage that falls squarely within policy exclusions:

Throughout the subject property, the ceiling deflection, delamination of drywall tape at the ceilings, and cracks noted in the drywall are typical manifestations of differential foundation movement.

---

54 Exhibit A-4 Exclusions [Colony/Wing Joe 0576-0577].
55 Exhibit C ¶11 p. 2-3 [Affidavit of L. Miller]; Exhibit B-15 [November 21, 2014 Abercrombie Report, [Colony/Wing Joe 0306-0308].

Stains and fungal growth in mechanical closet are the result of disconnected water heater drain pan in Unit 6 directly above Unit 3.

Peeling paint at bathroom ceiling is likely the result of improper ventilation/ moisture accumulation from day to day use of the bathroom.

The bowed masonry columns present on the front elevation of each building are the result of improper use of brick veneer as a structural component as well as the fact that the majority of the columns are cantilevered beyond the foundation by four to five inches.[56]

25.    Because of this evidence of both excluded loss and potentially-covered loss, Wing Joe carries the burden of segregating covered from non-covered loss. Judge Jane Boyle addressed a similar situation in *Hamilton*, a case in which there was evidence that the subject property suffered damage from a storm outside the relevant coverage period and damage from the insured's failure to maintain the property.[57] In finding that the insurer introduced sufficient evidence that non-covered perils damaged the property, Judge Boyle held:

> Plaintiffs have failed to sustain their burden of establishing evidence to allow a jury to allocate damages between the July Hailstorm and noncovered perils. Though Mr. Shingler refutes the charge that he cannot attribute specific damage to the storm, neither he nor Plaintiffs point to anything that would allow a jury to reasonably distinguish between the damage that was caused by the July Hailstorm and the damage caused by other admitted, potential sources.[58] (citations omitted).

26.    Like in *Alaniz* and *Hamilton*, Colony has shown that the damage now claimed by Wing Joe in this lawsuit is due to a variety of excluded causes of loss such as wear and tear, latent and other defects in materials, improper maintenance, improper ventilation and foundation movement. Colony's introduction of this evidence shifts the burden to Wing Joe to provide "evidence to allow the trier of fact to segregate covered losses from non-covered losses."[59] Wing Joe cannot make this showing. The only evidence it has provided to Colony is the excessive

---

56 Exhibit G, Jeff Hunt Affidavit ¶5 p. 2.
57 *Hamilton Properties v. Am. Ins. Co*., 3:12-CV-5046-B, 2014 WL 3055801, at *6 (N.D. Tex. July 7, 2014), *aff'd*, 15-10382, 2016 WL 1533931 (5th Cir. Apr. 14, 2016).
58 *Id.*
59 *Id.* (citing *Feiss v. State Farm Lloyds,* 392 F.3d 802, 807 (5th Cir.2004)).

IntegraClaim estimate that apparently includes allowances for every portion of the property, including areas such as the roof and ceiling that Wing Joe had already replaced or repaired when Jeff Hunt inspected the property.  And, the more recent Blackstar estimate, prepared almost three years after the hailstorm and which addressed all damage observed regardless of cause, throughout this five building, twenty-six unit apartment complex, fails to meet Wing Joe's burden. Because Wing Joe failed to timely report the claim, failed to submit a Sworn Proof of Loss and failed to carry its burden of showing what covered damage Colony allegedly failed to pay for, it cannot recover any additional proceeds from Colony.

**C. Lack of a contract breach or bona fide factual or legal disputes preclude Wing Joe's extra-contractual claims alleging breach of the duty of good faith and fair dealing and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act.**

27.    Wing Joe alleges that Colony breached the duty of good faith and fair dealing, violated the Texas Deceptive Trade Practices Act, and violated the Texas Insurance Code Chapter 541, asserting vague allegations of unfair or unreasonable actions and referencing related statutory provisions without providing supporting facts.[60] These claims each fail for several reasons. First, the Texas Supreme Court has noted that bad faith requires a breach of contract accompanied by an independent tort.[61] In other words, if there is no breach of contract, there can generally be no bad faith.[62] As explained above, Colony did not breach its contractual duties because it promptly paid Wing Joe's claim based on a reasonable and prompt investigation. After Abercrombie completed its estimate, Colony promptly issued payment.[63]

---

60 Original Petition, pages 4-6.
61 *See Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex. 1994); *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995); *DeLaGarza v. State Farm,* 175 S.W.3d 29, 32-33 (Tex. App.—Dallas 2005), *supp. op. on reh'g,* 181 S.W.3d 755, 756 (Tex. App.—Dallas 2005, pet. denied) (holding that insurer did not fail to meet insurance code deadline for making payment because duty to send payment never arose when insured did not notify insurer of his willingness to settle for lesser amount than full claim).
62 *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010).
63 Exhibit B-8 [Colony/Wing Joe 0732-0735].

After Wing Joe's public adjuster notified Colony of additional damage, Abercrombie adjusted its estimate, Wing Joe agreed with the final estimate and Colony promptly made a supplemental payment for an agreed upon amount.[64] Accordingly, there is no evidence that Colony underpaid the claim, which is required for Wing Joe to prove that Colony breached the contract. Second, while the Texas Supreme Court "[has] not exclude[d]…the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the Policy claim," Wing Joe has alleged no conduct nor presented any evidence that Colony engaged in any "extreme" act other than a simple disagreement regarding the scope of loss. Third, a claimant trying to prove common law and statutory extra-contractual claims show that an insurer denied or delayed payment when liability was reasonably clear.[65] Liability under the Policy for amounts above Colony has already paid has never been reasonably clear because Colony's re-inspections revealed only excluded causes of loss and Wing Joe has no evidence to support coverage for the additional damages it claims.

       *a.   A lack of breach of contract generally negates extra-contractual causes of action.*

28.     As there is no evidence that Colony breached the insurance contract, all other claims fail because these types of extra-contractual claims generally require a threshold showing that the insurer breached its contract.[66] The Texas Supreme Court has noted "[a]s a general rule there can be no claim for bad faith independent of the policy action when an insurer has promptly denied a claim that is in fact not covered."[67]

---

64 *Id.*

65 The elements can be found in the following: *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W. 2d 42, 44 (Tex. 1998) (element 2(1)); *Universe Life Ins. Co. v. Giles*, 950 S.W. 2d 48, 50–51 (Tex. 1997) (elements 1-2); *Union Bankers Ins. Co. v. Shelton*, 889 S.W. 2d 278, 284 (Tex. 1994) (elements 1-2); *Arnold v. National Cty. Mut. Fire Ins. Co.*, 725 S.W. 2d 165, 167 (Tex. 1987) (elements 1-2(1)); *see also Aranda v. Insurance Co. of N. Am.*, 748 S.W. 2d 210, 212–13 (Tex. 1988).

66 *Page*, 315 S.W.3d at 532.

67 *Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *see also N. Amer. Shipbuilding, Inc. v. Southern Marine & Aviation Underwriting, Inc.,* 930 S.W.2d 829, 835 (Tex. App.—Houston [1st Dist.] 1996, no writ).

29.     While the Texas Supreme Court changed the bad faith standard from "no reasonable doubt" to "reasonably clear liability," the Court did not abrogate the *bona fide* dispute rule.[68] Under the *bona fide* dispute rule, "evidence that only shows a *bona fide* dispute about the insured's liability on the contract does not rise to the level of bad faith."[69]

30.     Thus, even if Wing Joe can show that it was entitled to proceeds that exceeded what Colony paid, any discrepancies were at most, the result of a *bona fide* dispute regarding the extent of property damage caused by hail. Any arguments to the contrary are undermined by the fact that Luis Miller promptly re-inspected the property after Wing Joe retained a public adjuster, who agreed with Miller's final estimate after the June 20, 2012, inspection and Colony promptly issued supplemental payments accepted by Wing Joe without complaint for over two years.

> b.  *No evidence of independent tort supporting common-law or statutory extra-contractual claims.*

31.     Wing Joe also makes vague allegations that Colony violated various provisions of the Texas Insurance Code without providing any factual support. However, the evidence clearly shows Colony timely investigated the claim, complied with all deadlines under the Texas Insurance Code, and paid all covered damages.

32.     There are two triggering events in Chapter 542: (1) the notice of claim;[70] and (2) the insurer's receipt of all information necessary to establish the final amount of loss.[71] Under this provision, an insurer has 15 days to acknowledge receipt of a claim, commence an investigation, and request from the claimant all items, statements, and forms that the insurer

---

68 *See United States Fire Ins. Co. v. Williams,* 955 S.W.2d 267 (Tex. 1997) (*per curiam*).
69 *Williams,* 955 S.W.2d at 268; *State Farm Fire & Cas. Co. v. Woods,* 925 F.Supp. 1174 (E.D. Tex. 1996); *Moriel,* 879 S.W.2d 10 at 17.
70 TEX. INS. CODE § 542.055(a).
71 *Id.* at §542.056(a).

reasonably believes will be required from the claimant.[72] *After* the insurer receives all required documents and information, it has 15 business days to notify a claimant in writing whether it will accept or reject the claim.[73] If an insurer accepts the claim, it must issue payment within an additional five business days.[74]

33.    The  evidence shows that Colony: (1) immediately assigned Abercrombie to adjust the claim, and that Abercrombie contacted the insured on April 4, 2012, just two days after Wing Joe reported the claim; (2) Abercrombie and Wing Joe scheduled an inspection on April 20, 2012; (3) Abercrombie completed its report and estimate and sent it to Colony on or around May 15, 2012; and (4) Colony issued payment on May 17, 2012,which was delivered to Wing Joe on May 29, 2012, less than 15 days after Colony had received everything necessary to accept or reject the claim. This evidence shows that Colony complied with all deadlines imposed by the Insurance Code as a matter of law.

### D.  No evidence that Colony violated the Deceptive Trade Practices Act.

34.    Plaintiff alleges violations of the Texas Deceptive Trade Practices Act, citing the laundry list set forth in Texas Business and Commerce Code Section 17.46 and Chapters 541 and 542 of the Insurance Code, which also constitute violations of the DTPA through tie-in provisions.

35.    For the same reasons that Wing Joe's common law breach of the duty of good faith and fair dealing and Texas Insurance Code claims fail, it cannot show that Colony engaged in any unfair settlement practices.

---

72 *Id.* at § 542.055(a).
73 *Id.* at § 542.056(a).
74 *Id.* at §542.057(a).

36.     The *bona fide* dispute doctrine has been extended to all extra-contractual causes of action.[75] Therefore, Wing Joe's statutory claims under the DTPA and Unfair Claims Handling provisions of the Texas Insurance Code fail for the same reasons that the common-law claims fail. Aside from Wing Joe's allegations of bad-faith delays or refusals to pay, it alleges that Colony made misrepresentations. Wing Joe has failed to allege what specific misrepresentations Colony or Abercrombie made and thus has failed to plead these claims with specificity, much less introduce any supporting evidence.

### E.   Texas law does not recognize a fiduciary relationship between insurers and insureds

37.     Wing Joe also vaguely asserts: "Insurer also breached their fiduciary duties to Plaintiff that arose out of the special relationship that existed between the parties causing damages to the Plaintiff."[76]   However, Texas law is well settled on the issue that no fiduciary relationship exists between an insurer and its insured.[77]   A fiduciary duty is an extraordinary one that is not lightly created.[78]   Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship; accordingly, there is no general fiduciary duty between an insurer and its insured.[79]   To impose an informal fiduciary relationship in a business transaction, the requisite relationship of trust and confidence must exist prior to,

---

75 *See Giles*, 950 S.W.2d at 67 ("We have never intended that an insurer should be liable for tort damages simply for denying a claim in error, even if the insurer was negligent. To the contrary, we promised at the tort's inception that "carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim."); *see also, Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988); *Moriel*, 879 S.W.2d at 17–18 ("Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith").

76 Exhibit _, Plaintiff's Original Petition at ¶ 23, page 6.

77 *Wayne Duddleston, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex. App.—Houston [1st Dist.] 2003, pet. den'd); *In re Segerstrom*, 247 F. 3d 218, 227 (5th Cir. 2001); *citing Caserotti v. State Farm Ins. Co.*, 791 S.W.561, 565 (Tex. App.—Dallas 1990, writ denied); *Tectonic Realty Inv. Co. v. CNA Lloyd's Ins . Co.*, 812 S.W. 2d 647, 651 (Tex. App.—Dallas, 1991, writ denied).

78 *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 301 (Tex.App.—El Paso 1996), *aff'd on other grounds*, 966 S.W.2d 482 (Tex. 1998); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.—Dallas 1989, no writ).

79 *Garrison*, 927 S.W.2d at 301; *Caserotti*, 791 S.W.2d at 565.

and apart from the agreement made the basis of the suit.[80]   In sum, Texas does not recognize a

fiduciary duty between insurers and their insureds, only a duty of reasonable care.[81]

Accordingly, Colony is entitled to summary judgment on Wing Joe's cause of action for breach

of a non-existent fiduciary duty, as a matter of law.

**F.  No cause of action recognized for negligence or gross negligence against insurers.**

38.   Texas law is well settled that an insured does not have a cause of action against an

insurer for negligent claims handling.[82]   Accordingly, Colony is entitled to summary judgment

on Wing Joe's vague allegations of non-existent negligence and gross negligence causes of

action[83] are deficient as a matter of law and should be summarily dismissed.

**G.  Wing Joes' Extra-Contractual Claims are Barred by the Applicable Statutes of
Limitations.**

39.   Wing Joe has not alleged or established when it contends its extra-contractual

causes of action accrued. The alleged violations of the Texas Insurance Code, Texas Deceptive

Trade Practice Act and alleged breach of the common-law duty of good faith and fair dealing are

barred by applicable statutes of limitations. These claims must be brought within two years from

the date of accrual.[84]  Here, on June 22, 2012, Colony's independent adjuster, Luis Miller

informed Wing Joe that there was no coverage for the chipping to the brick because the chips

were not hailstorm related, but due to sulfur content in the Mexican clay bricks.[85]  And Wing Joe

agreed with Colony's final estimate without complaint for over two years.  After the later claim

---

80 *Wayne Duddleston, Inc.*, 110 S.W.3d at 96 .
81 *R.R. Street & Co., Inc. v. Pilgrim Enter., Inc.,* 81 S.W.3d 276, 305 (Tex. App.—Houston [1st Dist.] 2001, no
pet.).
82 *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding "there is no duty
beyond the contract itself . . .[I]n essence, Texas law does not recognize a cause of action for negligent claims
handling.") (*citing French v. State Farm Insurance Co.*, 156 F.R.D. 159, 162 (S.D. Tex. 1994); and *United Servs.
Automobile Ass'n v. Pennington*, 810 S.W.2d 777, 783-84 (Tex.App.—San Antonio 1991, writ denied)).
83 Original Petition, pages 6-7.
84 TEX. CIV. PRAC. & REM. CODE § 16.003(a); TEX. INS. CODE § 541.162(a); TEX. BUS. COMM CODE. §17.565.
85 Exhibit C, Miller Aff at 8, page 2.

was submitted, Colony maintained its position finding that all covered damage had been paid, and no additional amounts were owed.[86] All of Plaintiff's extra-contractual causes of action are based on the allegedly inadequate payment and no coverage findings related to the brick.  So at the latest, Wing Joes' causes of action for common law breach of the duty of good faith and fair dealing, Texas Insurance Code and DTPA violations accrued on August 8, 2012. But Wing Joe did not file suit until July 14, 2015, nearly a year after August 8, 2014, the date the statute of limitations ran on Wing Joes' extra-contractual causes of action.

40.     The Texas Supreme Court holds an insured's extra-contractual causes of action accrue on the date that the final action is taken on the claim.[87] Plaintiff untimely filed its lawsuit on July 14, 2015. To meet the two year statute of limitations, Plaintiff was required to assert its claims by August 2, 2014. In short, even if these claims had any basis, which as established above, they do not, Wing Joe filed its lawsuit too late.[88]

## CONCLUSION

Texas Courts have been inundated with thousands of cases stemming from the hailstorms that hit the Rio Grande Valley in the spring of 2012. For each meritorious case, several more are filed indiscriminately, years later despite an insurer's prompt investigation, reasonable damage estimate, and prompt payment accepted by the policyholder without complaint. This is one of those cases. Not only does each of Wing Joes' causes of action lack merit, but Wing Joe also

---

[86] Exhibit C, Miller Aff at 8-13, pages 2-3.

[87] TEX. CIV. PRAC. & REM. CODE § 16.003(a); TEX. INS. CODE § 541.162(a); *Prov. Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221-22 (Tex. 2004); *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 827 (Tex. 1990).

[88] See TEX. INS. CODE § 541.162(a); TEX. CIV. PRAC. AND REM. CODE §16.003(a); *Knott, M.D.*, 128 S.W.3d at 220–21 (insured's extra-contractual causes of action against insurer for misrepresentations, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the DTPA were governed by two-year statute of limitations that accrued upon the denial of insured's claim for benefits under the policy); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998) (applying two-year limitation period to all claims grounded in Insurance Code).

failed to prosecute them timely. For these reasons, Colony requests final judgment on all of Wing Joes' claims.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: _____ /s/ David D. Disiere _____
David D. Disiere
State Bar No. 00785356
Federal ID No. 24430
disiere@mdjwlaw.com
808 Travis Street, 20TH Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

ATTORNEYS FOR DEFENDANT COLONY
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all known counsel of record via either hand delivery, certified mail, return receipt requested, email and/or via facsimile on April 25, 2016.

David DeGroot                                          *Via Email*
3827 N. 10th St., Suite 304
McAllen, TX 78501
(956) 627-2787
(956) 627-4363 – Facsimile
degroot@degrootlaw.org

/s/ David D. Disiere _____
David D. Disiere